UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

STEVEN NEGRON,

                     Plaintiff,

v.

UNITED STATES OF AMERICA,
CHRISTOPHER ENTZEL, and NICOLE
GULLIVER,

                     Defendants.

--------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

19-cv-05442 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Steven Negron ("Plaintiff"), a federal prisoner proceeding *pro se* and *in forma pauperis*, commenced this action on June 10, 2019 against Defendants United States of America (the "United States"), Chirstopher Entzel ("Entzel"), and Nicole Gulliver ("Gulliver" and collectively "Defendants"). Plaintiff brings claims pursuant to the First and Fifth Amendments of the United States Constitution and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671. Plaintiff seeks monetary damages as well as declaratory and injunctive relief.

By motion dated January 10, 2020, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 19; Doc. 20, "Defs. Br."). Plaintiff did not file any opposition to Defendants' motion.[1]

For the reasons set forth below the court GRANTS Defendants' motion to dismiss.

## **BACKGROUND**

The facts, as recited below, are taken from Plaintiff's Complaint. (Doc. 1, "Compl."). At the time of the alleged misconduct, Plaintiff was incarcerated at the Federal Correctional Institute, Otisville ("FCI Otisville") in New York, but he was subsequently transferred to the Allenwood Low Federal Correctional Institution ("Allenwood LFCI") in Pennsylvania.

On a date Plaintiff cannot recall, Entzel allegedly took Plaintiff's prescription eyeglasses and refused to return them. (*Id*. ¶¶ 21–22). Plaintiff asserts that he, his family, and his attorney contacted the prison to try and get the glasses returned. (*Id.* ¶ 24). After Plaintiff complained to the warden, the glasses were returned. (*Id.* ¶ 23). Plaintiff allegedly notified several staff members at FCI Otisville, as well as the Bureau of Prisons Office of Internal Affairs and the "Central Office in Washington" that Entzel was "trying to transfer him in retaliation for complaining about the glasses." (*Id*. ¶ 24). Plaintiff also allegedly reported Entzel's misconduct to Entzel, the "Administrative Remedy Coordinator" who is responsible for responding to and docketing

---

[1] Plaintiff had notice that Defendants moved to dismiss his Complaint. On January 10, 2020, Defendants filed a certificate of service indicating that Plaintiff was served with a copy of Defendants' moving papers. (Doc. 21). On February 25, 2020, Defendants filed a letter asking the Court to consider its motion fully briefed because Plaintiff did not file any opposition. (Doc. 22). Defendants' letter was mailed to Plaintiff. (*Id.*). On March 4, 2020, Defendants' filed a letter received from Plaintiff indicating that Plaintiff had never received Defendants' opening brief. (Docs. 23, 23-1). On March 5, 2020, Judge Karas, who presided over this case before it was transferred to me on April 16, 2020, granted Plaintiff an extension of time until April 30, 2020 to file his opposition brief. (Doc. 24). By letter dated April 5, 2020, and filed via ECF on April 20, 2020, Plaintiff requested an extension of time to file his opposition brief. (Doc. 26). On April 22, 2020, the Court granted Plaintiff an extension until May 29, 2020 to file his opposition brief. (Doc. 27). Thereafter, Plaintiff did not file a brief, seek an additional extension of time to oppose, or otherwise communicate with the Court.

grievances, but Entzel "improperly rejected" and "delayed responding" to the grievances. (*Id.* ¶ 26). Entzel allegedly told Plaintiff that he was "going to pay for filing grievances" and thereafter retaliated against Plaintiff "by having Gulliver arbitrarily and capriciously increase [Plaintiff's] custody points [] to justify [Plaintiff's] transfer to another institution." (*Id.* ¶ 27).

Plaintiff asserts that on September 27, 2018 at 1:30 a.m., he "was suddenly awoken in the middle of the night" and sent to the Metropolitan Detention Center in Brooklyn. (*Id.* ¶ 30). Gulliver was allegedly responsible for preparing the "Form 409" which is submitted when an inmate is transferred to a new institution. (*Id.* ¶ 31). Plaintiff claims the Form 409 included "misleading and unwarranted information" and that the transfer of Plaintiff to a new institution was "a direct result of the racial profiling of Plaintiff's hispanic jew status and complaints about Entzel." (*Id.*). Entzel and Gulliver, who are "white," allegedly "made certain racial [epithets]" to Plaintiff, who is an "Orthodox Jew" and "Entzel and Gulliver told plaintiff that he should not have written him up and complained to the warden." (*Id.* ¶ 25). Plaintiff avers that his transfer "was the direct result of the filing of prison grievances against Entzel and [Plaintiff's] hispanic jew status." (*Id.* ¶ 33). Plaintiff asserts that other inmates "with more severe offenses or prohibited acts" were not transferred and that the "only difference between those inmates and Plaintiff was that none of them filed complaints against the Camp Administrator Entzel." (*Id.* ¶ 28). Plaintiff provides names and identification numbers for six inmates, allegedly all white, who were punished but not transferred. (*Id.* ¶ 29). Plaintiff self identifies as an "Orthodox Jew," "spanish Jewish," and/or a "hispanic jew." (*Id.* ¶¶ 25, 29, 31).

Plaintiff sought an investigation related to his transfer, but he claims that none has been conducted. (*Id.* ¶ 32). Plaintiff asserts that he was told by staff at FCI Otisville that "they, Gulliver and Entzel got it out for you." (*Id.*).

## STANDARD OF REVIEW

I. **Fed. R. Civ. P. 12(b)(1)**

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Feldheim v. Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 366 (S.D.N.Y. 2017) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. N.Y.C. Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.    **Fed. R. Civ. P. 12(b)(6)**

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)) (internal quotation marks omitted). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading

requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Cappius,* 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris,* 572 F.3d at 72)). Therefore, while the Court is "obligated to draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

The Court also has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Where, as here, a plaintiff has not filed an opposition brief to the motion to dismiss, the Court shall "decide th[e] motion without the benefit of plaintiff's opposition papers, and construe the [c]omplaint in the light most generous to the plaintiff while drawing every reasonable inference in his favor." *Marshall v. City of New York*, No. 10-CV-3137, 2010 WL 4739810, at *1 (S.D.N.Y. Nov. 17, 2010).

## <u>ANALYSIS</u>

Plaintiff's Complaint raises five claims for relief. Plaintiff's negligence, negligent supervision, and negligent training and hiring claims are brought pursuant to the FTCA (the

"FTCA Claims"). Plaintiff also asserts First Amendment retaliation and Fifth Amendment equal protection claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (the "*Bivens* Claims"). In addition to monetary damages, Plaintiff seeks a declaratory judgment and injunctive relief. The Court will analyze Plaintiff's FTCA Claims and *Bivens* Claims seriatim.

## I.   FTCA Claims

First, Plaintiff's FTCA claims can only be asserted against the United States because the "only proper defendant to a tort claim under the FTCA is the United States." *Skyers v. Sommer*, No. 12-CV-3432, 2016 WL 4484241, at *7 (S.D.N.Y. Aug. 23, 2016) (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991)). Therefore, to the extent Plaintiff brought FTCA claims against Entzel and Gulliver, they are dismissed. Second, the Court finds that Plaintiff's FTCA Claims against the United States must be dismissed for lack of subject matter jurisdiction.

Generally, the United States is immune from suit unless "it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (quoting *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)). The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Liranzo*, 690 F.3d at 85 (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)). If an FTCA claim does not fit within those specified circumstances, a district court does not have subject matter jurisdiction over the claim, and it is must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

The FTCA provides federal courts with subject matter jurisdiction and waives the sovereign immunity of the United States for claims related to "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, the FTCA requires that federal courts "consult state law to determine whether the government is liable for the torts of its employees." *Liranzo*, 690 F. 3d at 86 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)). This is commonly referred to as the "private analogue" requirement which calls for a court to ask "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *McGowan*, 825 F. 3d at 125 (quoting *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996)).

The FTCA also provides that "[n]o person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody *without a prior showing of physical injury* . . . ." 28 U.S.C. § 1346(b)(2) (emphasis added); *see also* Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."). This express statutory limitation on the scope of FTCA liability prevents a plaintiff from pursing relief under the FTCA absent a showing that physical injuries incurred while in custody. *See Bowens v. Fed. Bureau of Prisons*, No. 12-CV-5591, 2013 WL 3038439, at *9 (S.D.N.Y. June 18, 2013); *see also e.g.*, *Carter v. United States*, 694 F. App'x 918, 922 (4th Cir. 2017) (noting physical injury requirement under 28 U.S.C. § 1346(b)(2) for prisoner asserting FTCA claim); *Perez v. United States*, 330 F. App'x 388, 389 (3rd Cir. 2009) (same); *Cravero v. United States*, No. 16-CV-

161726, 2020 WL 4288448, at *2 (C.D. Cal. Apr. 24, 2020) (same); *Christensen v. United States*, No. 14-CV-134, 2015 WL 1914337, at *4 (E.D. Ky. Apr. 27, 2015) (same).

Here, with respect to Plaintiff's claims for relief under the FTCA for negligence, negligent supervision, and negligent training and hiring (Compl. ¶¶ 34–52), Plaintiff does not allege that he suffered any physical injuries related to the alleged misconduct. Regarding his negligence claim, Plaintiff alleges that he "suffered in pain and agony being away from his family members, especially since she is ill and because she is undergoing treatment [and] cannot travel long distances." (*Id.* ¶ 39). Regarding his negligent supervision claim, Plaintiff alleges that he "suffered pain and agony being away from his family, especially since one of them is ill and cannot travel far as a result of undergoing treatment." (*Id.* ¶ 46). Finally, regarding his negligent training and hiring claim, Plaintiff alleges that he "suffered pain and agony being away from his family, incurring additional expenses, and unable to see some of those family members as one of them is very ill and cannot travel far as a result of undergoing treatment." (*Id.* ¶ 52). The allegation that he "suffered pain and agony being away from his family" is not a physical injury and thus is insufficient to satisfy the requirements for an FTCA claim. S*ee White v. Firth*, No. 14-CV-308, 2014 WL 7074602, at *3 (E.D. Ky. Dec. 15, 2014) ("[A]llegations of emotional distress do not provide a basis for recovery under the FTCA."); *Calderon v. Foster*, No. 05-CV-00696, 2007 WL 1010383, at *8 (S.D.W. Va. Mar. 30, 2007), *aff'd sub nom. Calderon v. Corr. Officer Foster*, 264 F. App'x 286 (4th Cir. 2008) (finding that allegations of *de minimis* physical injuries are insufficient "to recover damages for mental and emotional injuries" under the FTCA). Plaintiff does not allege anywhere in his Complaint that he suffered any physical injuries as a result of any Defendants' actions or conduct. Thus, Plaintiff has failed to satisfy the FTCA's physical injury requirement and Plaintiff's FTCA claims are dismissed. *Bowens*, 2013 WL 3038439, at *9.

Separately, and independently dispositive, Plaintiff's FTCA claims cannot survive because there is no private analogue to his claims. To determine if a private analogue exists the Court asks "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *McGowan*, 825 F. 3d at 125. Stated differently, "for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred; and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996) (quoting *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)) (internal quotations omitted). For example, a federal prisoner in New York may be able to bring a medical malpractice claim against a prison doctor under the FTCA if he can satisfy the elements of a medical malpractice claim under New York law. *See Vale v. United States*, No. 10-CV-4270, 2015 WL 5773729, at *2 (E.D.N.Y. Sept. 30, 2015), *aff'd sub nom. Vale v. United States of Am.*, 673 F. App'x 114 (2d Cir. 2016).

Here, Plaintiff's FTCA claims have no private analogue because no private analogue exists where a plaintiff's claims are "grounded solely on the government's failure to follow applicable regulations." *McGowan*, 825 F. 3d at 127 (citing *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)); *see also Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *10 (S.D.N.Y. Jan. 29, 2018) (finding that no private analogue exists for violating Bureau of Prisons' ("BOP") policy). Regarding Plaintiff's negligence claim, that claim is premised solely on Defendants' alleged failure to follow their own policies or regulations. Plaintiff alleges that Defendants breached the duty of care owed under 18 U.S.C. § 4042, which provides regulations for BOP, and that "Entzel knowingly and willfully transferred Plaintiff on a basis prohibited by the [BOP] policy." (Compl. ¶¶ 37, 40). Plaintiffs' negligent supervision and negligent training and hiring claim are similarly

premised on Defendants' alleged failure to follow its own policies and regulations. Plaintiff alleges that the "United States was negligent in supervision of Entzel and Gulliver when [it] allowed them to prepare and submit a transfer request on the basis of conduct prohibited by it's [sic] own rules and regulations," (*id.* ¶ 44 (negligent supervision claim)), and that the "United States owed Plaintiff a duty to ensure that it hired and trained it's [sic] agents officers, and employees of it's [sic] rules and regulations governing the supervision of inmates, abuse of discretion and that race and retaliation is prohibited against an inmate," (*id.* ¶ 50 (negligent training and hiring claim)). It is firmly established in the Second Circuit that New York law does not "recognize[] a freestanding duty to abide by private regulations." *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (quoting *McGowan*, 825 F. 3d at 127). Therefore, "[b]ecause New York does not recognize a duty to follow private regulations, [Plaintiff] cannot ground his negligence claim[s] on [BOP's] failure to follow its own directives." *Id.* at 135. Accordingly, because Plaintiff has failed to satisfy the FTCA's physical injury requirement and because Plaintiff's FTCA claims do not have a private analogue, the Court lacks subject matter jurisdiction to hear Plaintiff's FTCA claims and the claims are dismissed.

## II.   *Bivens* Claims

Defendants move to dismiss Plaintiff's *Bivens* claims pursuant to Fed. R. Civ. P. 12(b)(6). The Court finds that Plaintiff has failed to state claims for relief under *Bivens* and dismisses Plaintiff's *Bivens* claims.

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The "judicially-created" *Bivens* remedy is intended "to deter individual federal officers

from committing constitutional violations" and permits a citizen to recover monetary damages directly from a federal official. *Id.* (quoting *Malesko*, 534 U.S. at 70). The Supreme Court has found that a *Bivens* remedy "is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Id.* (citing *Malesko*, 534 U.S. at 69).

A *Bivens* remedy has only been recognized by the Supreme Court in three contexts. First, in *Bivens*, the Supreme Court permitted a plaintiff to recover monetary damages related to a Fourth Amendment violation. *Bivens*, 403 U.S. at 389–90. The plaintiff in *Bivens* alleged he was "subjected to an unlawful, warrantless search which resulted in his arrest." *Arar*, 585 F.3d at 571 (citing *Bivens,* 403 U.S. at 389–90). Second, in *Davis v. Passman*, the Supreme Court applied *Bivens* in the Fifth Amendment context to an employment discrimination claim. 442 U.S. 228 (1979). Third, in *Carlson v. Green,* the Supreme Court applied *Bivens* in the context of an Eighth Amendment violation by prison officials. 446 U.S. 14, 21 (1980). Despite many other opportunities to extend *Bivens*, the Supreme Court has consistently declined to do so and has recently observed "if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result." *Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017)); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) ("In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims." (citing *Abbasi*, 137 S. Ct. at 1857)).

If a plaintiff's complaint raises a *Bivens* claim the court engages in a two-step inquiry. First, the Court must determine whether the claim "arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 74 (quoting *Malesko*, 534 U.S. at 68). The Supreme Court has found that the "understanding of a 'new context'" should be construed broadly so as to

include any context that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). Next, if the claim does arise in a new context, the court must determine "whether there are any special factors that counsel hesitation about granting the extension." *Id.* (citing *Abbasi*, 137 S. Ct. at 1857). One such special factor is "whether there is an alternative remedial scheme available to the plaintiff." *Arar*, 585 F.3d at 572 *see also Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available a *Bivens* remedy usually is not."). If there are "special factors that counsel hesitation about granting the extension" the court should not create a new *Bivens* remedy. *Hernandez*, 140 S. Ct. at 74

With these guiding principles in mind, and cognizant that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts,'" *Arar,* 585 F.3d at 571 (citing *Malesko,* 534 U.S. at 69), the Court turns to Plaintiff's *Bivens* claims. First, Plaintiff asserts a First Amendment free speech claim based upon the allegedly retaliatory prison transfer. (Compl. ¶ 54). The Court finds that this presents a new *Bivens* context. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Wilson v. Bolt*, No. 18-CV-416, 2019 WL 5197335, at *6 (N.D.N.Y. May 28, 2019), *report and recommendation adopted*, No. 18-CV-416, 2019 WL 3561742 (N.D.N.Y. Aug. 6, 2019), *appeal dismissed* (Nov. 18, 2019) ("The Supreme Court has never recognized a First Amendment right to be free from retaliation as a cognizable *Bivens* claim."). The Court need not proceed to step two of the *Bivens* inquiry because binding case law requires the Court to find that Plaintiff's First Amendment *Bivens* claim must fail irrespective of any special factor analysis.

"Nationwide, district courts seem to be in agreement that . . . prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Akande v. Philips*, No. 17-CV-01243,

2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018) (quoting *Free v. Peikar*, No. 17-CV-00159, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018)). At step two of the *Bivens* analysis certain of these courts have found that the BOP provides an alternative remedial structure, while others have found that even in the absence of an alternative remedy, creation of a new *Bivens* remedy is not appropriate absent express congressional approval. *Wilson*, 2019 WL 5197335, at *7. Either way, this Court need not re-analyze a settled question of law, particularly in the absence of any intervening Supreme Court precedent establishing a new *Bivens* remedy.

The Supreme Court, in *Bush v. Lucas*, addressed the question of whether a federal employee could "recover damages from his superior for violation of his First Amendment rights." 462 U.S. 367, 378 (1983). The plaintiff in *Bush*, a federal employee, alleged that his First Amendment free speech rights were violated when he faced a retaliatory demotion after making public statements critical of his employer. *Id.* at 370–72. The Court, assuming that plaintiff's First Amendment rights were violated by the adverse personnel action, "decline[d] to create a new substantive legal liability without legislative aid . . . because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it." *Id.* at 390 (internal citations and quotations omitted). In light of this clear Supreme Court precedent declining to extend *Bivens* to the First Amendment context, the Court cannot permit Plaintiff here to pursue *a Bivens* remedy related to his First Amendment claim. Accordingly, the Court dismisses Plaintiff's First Amendment *Bivens* claim.

The Court next turns to Plaintiff's Fifth Amendment Due Process claim asserting that he was denied equal protection under the laws. (Compl. ¶ 55). Specifically, Plaintiff asserts that the decision to transfer him to a new facility was "a direct result of the racial profiling of Plaintiff's hispanic jew status" (*id.* ¶ 31); that Entzel and Gulliver, who are "white," allegedly "made certain

racial [epithets]" to Plaintiff (*id.* ¶ 25); and that other white inmates "with more severe offenses or prohibited acts" were not transferred (*id.* ¶¶ 28–29). First, the Court must consider whether Plaintiff's Fifth Amendment *Bivens* claim arises in a new context. The Supreme Court, in *Davis*, permitted plaintiff to pursue a *Bivens* remedy related to a Fifth Amendment equal protection claim. *Davis*, 442 U.S. at 249–50. The plaintiff in *Davis*, a congressional staffer, alleged that she was wrongfully terminated from her employment on the basis of her sex, and brought an equal protection claim pursuant to the due process clause of the Fifth Amendment against her employer, a Congressman. *Id.* at 230. The Court found it was appropriate to expand *Bivens* and held that the plaintiff could pursue a *Bivens* remedy. *Id.* at 249–50.

While the Supreme Court in *Davis* recognized a *Bivens* remedy for a Fifth Amendment equal protection claim in the employment context, the issue herein remains whether Plaintiff's claim arises in a new context. Indeed, not every Fifth Amendment equal protection claim falls within the confines of *Davis*. *See Ojo v. United States*, 364 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (collecting Fifth Amendment equal protection claims that were found to arise in a new context); *see also Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) ("[E]ven though the Supreme Court has recognized causes of action in *Bivens* under the Fourth Amendment, in *Davis* under the Fifth Amendment, and in *Carlson* under the Eighth Amendment, that does not mean that any cause of action may lie under those Amendments simply by virtue of these Supreme Court cases."). Rather, the Court must conduct a more precise inquiry to determine "[i]f the case is different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. If it is, then the context is new. *Id.*

The Court finds that Plaintiff's claim herein is meaningfully different than the plaintiff's claim in *Davis*. While *Davis* addressed a Fifth Amendment claim in the employment context

brought by a congressional staffer against her employer, here, Plaintiff alleges that his transfer to a new facility was motivated, at least in part, because Defendants "racial[ly] profil[ed]" Plaintiff who is a "hispanic jew." (Compl. ¶ 31). The Court finds Plaintiff's claim arises in a new racial and/or religious context. *See Ojo*, 364 F. Supp. 3d at 172–73 (finding that plaintiff's Fifth Amendment claim alleging that BOP's dental care policy discriminated against pretrial detainees was a new context); *Gonzalez*, 269 F. Supp. 3d at 59 (finding that plaintiff's Fifth Amendment claim "relating to the alleged failure by prison employees to conduct 'meaningful' reviews of a plaintiff's placement in the SHU while in federal custody" was a new context).

Next, the Court must determine "whether there are any special factors that counsel hesitation about granting the extension." The Court declines to extend *Bivens* and create a new judicially-created remedy for Plaintiff's Fifth Amendment claim. Regarding special factors that counsel against extending *Bivens*, courts are generally reluctant to review decisions related to prison administration—such as the decision to transfer an inmate to a new facility—because such decisions "require[] expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Ojo*, 364 F. Supp. 3d at 176 (quoting *Alexander v. Ortiz*, No. 15-6981, 2018 WL 1399302, at *7 (D. N.J. Mar. 20, 2018)). Therefore, while "a policy of judicial restraint does not include failure to take cognizance of prisoners' valid constitutional claims . . . it would be inappropriate for the court to imply a remedy for damages in an area that is uniquely within the province and professional expertise of corrections officials." *Id*. (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)) (internal citations and quotations omitted). Additionally, an alternative remedial process is available to Plaintiff to challenge the allegedly improper racially/religiously motivated transfer in the form of a habeas petition brought pursuant to 28 U.S.C. § 2241. A § 2241 habeas petition may

be used to "challenge to the execution of a sentence . . . [which] includes matters such as . . . prison transfers." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (quoting *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001) (emphasis omitted). Thus, the Court finds that it is not appropriate to extend *Bivens* to cover Plaintiff's Fifth Amendment equal protection claim. *See Gonzalez*, 269 F. Supp. 3d at 60 (dismissing Fifth Amendment *Bivens* claim because plaintiff had alternative remedies available to him including, *inter alia*, "the filing of a writ of habeas corpus, pursuant to 28 U.S.C. § 2241."). Accordingly, Plaintiff's Fifth Amendment equal protection claim is dismissed.[2]

## III.   **Declaratory Judgment**

Having dismissed Plaintiff's FTCA Claims and *Bivens* Claims, the Court also dismisses Plaintiff's request for a declaratory judgment. Plaintiff seeks a "declaration of his rights" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2001. (Compl. ¶¶ 57–59). However, the Declaratory Judgment Act "is procedural only, and does not create an independent cause of action." *Carr v. DeVos*, 369 F. Supp. 3d 554, 563 (S.D.N.Y. 2019) (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). Because Plaintiff's FTCA Claims and *Bivens* Claims have been dismissed, Plaintiff does not have an independent claim for relief sufficient to sustain his request for a declaratory judgment. Accordingly, Plaintiff's request for a declaratory judgment is dismissed. *See Massone v. United State Dep't of Justice*, No. 18-CV-4908, 2020 WL 3000416, at *7 (S.D.N.Y. June 4, 2020) (dismissing declaratory judgment claim where "[p]laintiff has failed to state a viable underlying claim.").

---

[2] Construing Plaintiff's Complaint liberally, Plaintiff also appears to allege a Fifth Amendment procedural due process claim related to his transfer. Because "[i]t is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause," *Meriwether v. Coughlin*, 879 F.2d 1037, 1047 (2d Cir. 1989), Plaintiff's procedural due process claim is dismissed as well.

## IV.    **Injunctive Relief**

Plaintiff also seeks injunctive relief. Specifically, Plaintiff asks the Court to (1) "[e]njoin and restrain Defendants, thir [sic] agents, employees, successors, and all persons acting in concert or participating with them from enforcing, applying and implementing the views, position, pattern or practices as alleged in this complaint in violation of the Constitution and laws" and (2) "[i]ssue an order requiring Defendnats [sic] transfer Plaintiff back to FCI Otisville Camp." (Compl. at 10). Regarding Plaintiff's first request for injunctive relief, construing Plaintiff's Complaint liberally, this request appears to be related to the allegations that underlie Plaintiff's constitutional *Bivens* Claims. (*Id*. at 10 (seeking to enjoin "Defendants . . . from enforcing, applying and implementing the views, position, pattern or practices as alleged in this complaint in violation of the Constitution and laws")). The Court has already dismissed the *Bivens* Claims *supra*, but even assuming that the *Bivens* Claims had not been dismissed, the "only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citing *Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998)). Accordingly, Plaintiff's injunctive relief request related to the underlying *Bivens* Claims is dismissed.[3]

As to Plaintiff's second request for injunctive relief, that the Court "[i]ssue an order requiring Defendnats [sic] transfer Plaintiff back to FCI Otisville Camp," a civil action is not the proper vehicle for Plaintiff to seek such injunctive relief. Rather, a habeas petition brought pursuant to 28 U.S.C. § 2241 is the procedural mechanism a prisoner may utilize to "challenge to

---

[3] Additionally, to the extent Plaintiff raises injunctive relief claims against Entzel and Gulliver, those claims are rendered moot by Plaintiff's transfer to a new facility. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

the execution of a sentence." *Levine,* 455 F.3d at 78 (emphasis omitted). The "[e]xecution of a sentence includes matters such as . . . prison transfers.*" Id.* (quoting *Jiminian*, 245 F.3d at 146) (emphasis and internal quotations omitted). Because it is improper for Plaintiff to seek injunctive relief related to his transfer to a new prison facility in this proceeding, the Court dismisses Plaintiff's request for injunctive relief.

Additionally, the Court cannot convert Plaintiff's Complaint to a § 2241 habeas petition *sua sponte*. *See Simon v. United States*, 359 F.3d 139, 139 (2d Cir. 2004) ("[D]istrict courts may not *sua sponte* convert post-conviction motions, putatively brought under some other provision, into [habeas] motions . . . without first giving the petitioner notice and an opportunity to decline the conversion or withdraw the motion."). Accordingly, the Court dismisses Plaintiff's injunctive relief claim seeking a court order that he be transferred back to FCI Otisville.

## V.   <u>Leave to Amend</u>

"A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)) (internal quotations and alterations omitted). However, "[l]eave to amend may properly be denied if the amendment would be 'futil[e].'" *Id*. (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Here, the Court dismisses Plaintiff's FTCA Claims and *Bivens* Claims with prejudice because it cannot grant Plaintiff leave to amend those claims for relief. Plaintiff's FTCA and *Bivens* Claims all relate, principally, to his allegedly improper transfer to Allenwood LFCI. Regarding Plaintiff's FTCA Claims, any amendment would be futile as no "private analogue" exists. There is simply no set of facts Plaintiff could allege that could resurrect these claims. As to Plaintiff's

*Bivens* claims, any amendment would similarly be futile. Absent a Supreme Court decision creating a new *Bivens* remedy on all fours with Plaintiff's alleged *Bivens* Claims, Plaintiff's *Bivens* Claims cannot survive a motion to dismiss. Accordingly, because an Amended Complaint would undoubtedly suffer from the same deficiencies as Plaintiff's Complaint, the Court dismisses Plaintiff's FTCA and *Bivens* Claims with prejudice.

Regarding Plaintiff's request for injunctive relief, specifically that he be transferred back to FCI Otisville, Plaintiff may seek to convert his civil complaint into a § 2241 habeas petition. The Court notes, however, that this Court would not be the proper venue for Plaintiff to bring a habeas petition because venue is proper only in the district in which a habeas petitioner is currently confined. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (regarding "habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). Thus, if Plaintiff were to seek to convert the portion of his Complaint seeking injunctive relief related to his request to be transferred to FCI Otisville into a § 2241 habeas petition, the Court would be compelled to transfer this action to the Middle District of Pennsylvania, which, apparently, is where Plaintiff is presently confined. (*See* Defs. Br. at 20).

## CONCLUSION

Defendants' motion to dismiss is GRANTED. Plaintiff may, within 30 days from the date of this Order, seek to convert his injunctive relief request related to the allegedly improper prison transfer into a habeas petition brought pursuant to 28 U.S.C. § 2241. If Plaintiff files a § 2241 habeas petition within 30 days, and Plaintiff remains housed at Allenwood LFCI, the Court will transfer this action to the Middle District of Pennsylvania. If Plaintiff fails to file a § 2241 habeas petition within 30 days, this action will be dismissed in its entirety without further notice to the parties.

Defendants are directed to mail a copy of this Memorandum Opinion and Order to Plaintiff at the address on the docket and provide proof of service on the docket.

The Clerk is instructed to terminate the pending motion (Doc. 19).


                                                   **SO ORDERED:**


Dated:  New York, New York
        September 21, 2020          _____
                                    Philip M. Halpern
                                    United States District Judge